UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA | **<u>UNDER SEAL</u>** |
| v. | No. No. 3:02CR00380 (AHN) |
| ANNE PEMBER, | |
| Defendant. | Date: January 24, 2007 |

**GOVERNMENT'S MOTION FOR DEPARTURE PURSUANT TO
U.S.S.G. § 5K1.1 BASED ON PEMBER'S SUBSTANTIAL ASSISTANCE**

The Government respectfully submits this motion for a sentence significantly lower than what the Court determines to be the applicable advisory guideline range on the ground that defendant Anne Pember ("Pember") provided extraordinarily substantial assistance in the investigation and prosecutions stemming from the fraud that occurred at Cendant Corporation ("Cendant") and one of its predecessor companies, CUC International, Inc. ("CUC") during the 1990s. The sentence in this matter is scheduled for January 29, 2007 at 10:00am.

**Background**

As Your Honor is aware, on September 28, 1999, Pember executed an agreement with the Government to plead guilty to her participation in the fraud that occurred during her tenure at CUC and Cendant. In that same agreement, Pember also agreed to cooperate fully and truthfully with the Government. Unbeknownst

to Pember and the Government, Pember was about to embark upon a cooperation that was, by all accounts, unprecedented. Over the course of more than seven years, Pember would: (1) meet with the Government on at least sixty (60) separate occasions; (2) assist three separate and distinct sets of prosecutors in learning the "ins-and-outs" of the fraud at CUC/Cendant, as well as several complex accounting issues paramount to the prosecution of the case; (3) testify in three separate trials, spending a total of ten (10) days on the witness stand; and (4) play a crucial role in the successful prosecutions of the Chief Financial Officer ("CFO"), Chief Operating Officer ("COO"), and Chief Executive Officer ("CEO") of CUC.

     On June 14, 2000, already more than nine months into her cooperation, Pember pled guilty to a one count Information that charged her with conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371. At her plea allocution, as she had before, Pember candidly acknowledged her role in the conspiracy to fraudulently inflate the books and records of CUC and Cendant. The facts of the offense conduct, as well as all guidelines calculations, are well summarized in the Presentence Report and all addendum, thereto. The Government does not repeat them here.

## DEPARTURE FOR SUBSTANTIAL ASSISTANCE

As detailed below, Pember's cooperation was instrumental in securing the convictions of the COO E. Kirk Shelton ("Shelton") and CEO Walter A. Forbes ("Forbes"), as well as the guilty plea and subsequent cooperation of CFO Cosmo Corigliano ("Corigliano"), for their involvement in the fraud at CUC and Cendant.

U.S.S.G. §5K1.1 provides in pertinent part that:

> Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

Id.

The decision whether to make a motion for downward departure rests with the Government. See U.S.S.G. §5K1.1; Wade v. United States, 504 U.S. 181 (1992); see also Melendez v. United States, 518 U.S. 120 (1996); United States v. Gomez, 103 F.3d 249, 255 (2d Cir. 1997); United States v. Agu, 949 F.2d 63 (2d Cir. 1991); United States v. Khan, 920 F.2d 1100 (2d Cir. 1990); United States v. Rexach, 896 F.2d 710, 714 (2d Cir. 1990); United States v. Huerta, 887 F.2d 89, 93 (2d Cir. 1989). The Court in Huerta observed that the question of "substantial assistance" is "self evidently a question that the prosecution is uniquely fit to resolve." Huerta, 878 F.2d at 92. Moreover, Application Note 3 to the

Commentary to U.S.S.G. §5K1.1 provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance . . . ." Id.; see also Gomez, 103 F.3d at 255; Rexach, 896 F.2d at 714.

U.S.S.G. § 5K1.1 instructs that in determining whether a sentencing reduction is appropriate the court should consider, *inter alia*, the following non-exclusive factors:

- A. The court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

- B. the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

- C. the nature and extent of the defendant's assistance;

- D. any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

- E. the timeliness of the defendant's assistance.

## **DISCUSSION**

**A.  THE GOVERNMENT'S EVALUATION OF THE ASSISTANCE RENDERED**

In the view of the Government, Pember has completely, consistently, and very effectively honored her obligations under the plea agreement. As detailed below, Pember's cooperation in the prosecution of Corigliano, Shelton, and Forbes was extraordinary and was critical in every sense of the word. Each prosecutor and agent assigned to this case, a total of more than ten law enforcement agents, agreed that Pember's cooperation was essential because she was the best coconspirator at describing the fraud and its components. She worked hard, often enduring eight hour preparation sessions and, by one AUSA's observation, must have spent countless hours outside the Government's presence preparing for her cooperation and ultimate testimony at trial. Indeed, former United States Attorney Robert Cleary, who enjoys more than fifteen years of prosecutorial experience, referred to Pember as an "exemplary cooperator" who did as much as any he has encountered to make amends for her transgressions and to justify a downward departure motion.[1]

---

[1] At the outset, it is worth noting that each of the prosecutors contacted by the current prosecution team, as well as a former FBI agent, offered to draft letters to Your Honor on Pember's behalf. For the sake of economy, it was

Simply put, without Pember's cooperation, the Government could not have brought the successful prosecutions of Shelton and Forbes because of Pember's influence in obtaining the guilty plea and cooperation of Corigliano. Moreover, each of those prosecutions would have been immeasurably more difficult without the corroborative testimony of Pember, a witness whose credibility could not be seriously questioned in either one of three trials.

**B.    THE TRUTHFULNESS, COMPLETENESS, AND RELIABILITY OF ANY INFORMATION PROVIDED BY PEMBER**

From the first time that Pember proffered to the Government, she candidly provided information concerning her culpability, as well as other accountants and financial personnel at CUC, including two CFO's and the COO, all of whom conspired from the late 1980's through 1998 to fraudulently inflate the books and records of CUC. Throughout the investigation and prosecution, Pember worked tirelessly in cooperating by meeting with the Government on more than sixty (60) separate occasions. From the outset, it was obvious that Pember worked hard to recall all pertinent facts related to the fraud in educating the first of 3 different sets

---

decided that the Government's Motion would reflect the views of the many prosecutors and agents Pember has assisted.

of prosecutors she would meet, as well as a number of federal agents whose identity also changed over time.

Pember literally reviewed roomfuls of documents and spent hundreds of hours assisting and educating the Government in bringing those responsible for the fraud at CUC/Cendant to Justice. In each example that she provided the Government, her version of the facts were borne out by subsequently discovered documents or testimony to corroborate her claims. Indeed, the Government routinely relied upon Pember to point prosecutors and investigators to the documents necessary to establish much of the evidence used in this matter.

Prior to Trial One, the prosecution was unaware whether defendants Shelton and Forbes would contest that a fraud in fact existed at CUC during the relevant period (i.e. - the defense approach in the prosecution of Jeffrey Skilling and Kenneth Lay). Accordingly, the Government relied heavily upon Pember's ability to analyze the books and records of CUC/Cendant, and explain the operation of the fraud. Without Pember's assistance, the Government would have been forced to reconstruct and recreate years of transactions without the benefit of knowing what instructions she and others at CUC had received from their superiors and where they had implemented their goals of increasing CUC's/Cendant's earnings.

For example, Pember testified about the meaning behind the numbers and notations contained within Government Exhibit 136, notes taken during a meeting regarding the fraudulent use of merger reserves at CUC in 1997, after Pember had become controller of CUC. Pember explained how she took these notes at a meeting with Corigliano, then instructed Steven Speaks, who had taken over Pember's old job as controller of Comp-U-Card, to make entries into the General Ledger of Comp-U-Card. It was Pember's testimony that brought these fraudulent ledger entries to life for the jury. Pember also testified about the interlocking relationship between Government Exhibits 521, 524, and 527 - memoranda created, after consultation with Ernst & Young, in an attempt to justify a hole in the use of the Ideon merger reserve. These are just examples of the countless documents and entries that Pember reviewed with the Government over a seven year period, often working eight hours days during which she was exhaustively interviewed.

The unanimous opinion of the seven prosecutors and four investigators who conducted those interviews is that Pember was a truthful and reliable cooperator throughout her more than seven year commitment.

## C.    THE NATURE AND EXTENT OF THE PEMBER'S ASSISTANCE

The nature and extent of Pember's cooperation was extraordinary. Indeed, the length of her cooperation has far surpassed the statutory maximum for the offense which Pember plead guilty, 18 U.S.C. § 371, which is five years. As detailed above, it is the unanimous opinion of the prosecutors and agents involved, that her cooperation was as exhaustive as any they have ever seen.

Despite the length of her cooperation, it is clear that Pember merited a downward departure motion from the Government under the terms of her cooperation agreement very early in the investigation of the fraud at CUC/Cendant. To wit, from her first meeting with the Government, Pember admitted her own culpability and truthfully implicated others involved, including Corigliano. Indeed, Corigiliano acknowledged in all three trials that it was Pember's decision to plead guilty that greatly affected Corigliano's decision to ultimately plead guilty himself and cooperate against Shelton and Forbes. Having substantially assisted in the prosecution of Corigliano, Pember already earned a downward departure at that time. However, Pember's assistance did not end there.

Pember's cooperation continued. She met with the Government on more than 60 separate occasions. Perhaps what is even more extraordinary, due to circumstances out of her control, Pember had to educate at least seven different

prosecutors, as there were three changes in the staffing of the investigation and prosecution of this matter. Each time, Pember started from "scratch," describing the various accounting frauds at CUC with meticulous detail. When describing the frauds, Pember did not merely answer the Government's inquires, but often affirmatively volunteered information and directed the prosecutors attention to key documents to ensure that the Government obtained a clear and accurate view of what occurred at CUC during her tenure.

I have spoken to former prosecutors who worked with Pember on this case. They confirmed that their experience was substantially similar to my own. Pember always made herself available to meet. In fact, on several occasions she did so despite substantial personal issues that would distract the average person, including the illness of her husband who was suffering from stage III cancer during the course of this lengthy judicial process.

Perhaps making her cooperation even more extraordinary, Pember assisted two entirely different trial teams over the course of three separate trials.[2] In all, Pember testified for ten days on the witness stand. In Trial One, the prosecution of Shelton and Forbes, Pember was a key witness for the Government. Because

---

[2] Indeed, Pember assisted AUSA Carpenito and AUSA Martinez on an expedited basis, as they endeavored to learn, understand, and digest this matter in less than three to six months in preparation for the second trial.

Corigliano was forced out, on paper, of the accounting hierarchy in late 1997, Pember reported directly to Shelton and felt obligated to confirm all of Corigliano's instructions with Shelton.  As a result, her truthful testimony regarding meetings with Shelton during late 1997 and 1998 was critical to the conviction of Shelton.  Pember was able to testify that Shelton received and reviewed certain inculpatory evidence (i.e. - Government Exhibits 58A and 530) and provide the substance of conversations directly implicating Shelton in the fraud.  Additionally, key e-mail communications between Pember and Shelton were introduced through Pember's testimony (i.e. - Government Exhibit 506).  Indeed, in denying Shelton's motion for a new trial, Judge Thompson expressly found that Pember's testimony on its own was sufficient to convict Shelton.  See Ruling on Motion of Defendant E. Kirk Shelton for Bail Pending Appeal, Docket No. 1647 at 7.

As Your Honor knows, after completing Trial One, all three members of the prosecution were unable to continue in the prosecution of Forbes at Trial Two.  Faced with once again "teaching" a substantial portion of the case to another new set of prosecutors, Pember again rose to the occasion.  This time, taking less than six months to bring the new trial team up to speed.  It was at this time that I first began to meet with Pember.  I learned quickly what Pember's greatest asset was as

a cooperator - she did not "mince" words, breaking down sometimes complex accounting issues into plain English.  She often described accounting entries as "baseless" or "completely made up," making it simple for a non-accountant such as myself to understand.  It was this quality that resulted in Pember being the first witness in each of the three trials to explain the fraudulent conduct that she directly participated in to the jury.  As Your Honor may have noted, Pember gave an accurate, succinct explanation of the four main manipulations utilized by her coconspirators at CUC, often breaking it down into practical examples for the jury.

     Trial Two and Three were substantially different from Trial One for an obvious reason: Forbes was the sole defendant.  Although Pember did not have substantial personal or professional interaction with Forbes, Forbes's conviction also would not have been possible without the cooperation of Pember.  First, Pember's cooperation in the investigation led directly to the guilty plea, and ultimate cooperation of Corigliano against Forbes.  In addition, her truthful testimony about the single substantive interaction that she had with Forbes and several interactions that she had with Ernst & Young provided powerful corroboration of Corigliano's testimony implicating Forbes in two prongs of the three part plan - keeping CUC's longtime employee Pember and longtime accountant E&Y.  Despite the critical corroborating effect of Pember's testimony,

Forbes did not challenge it.  Perhaps even more significantly, Pember may have been the only Government witness whom Forbes did not call a liar.  In a case with only one witness who directly implicated Forbes, her testimony was crucial.

**D.    DANGER OR RISK OF INJURY TO PEMBER OR HER FAMILY RESULTING FROM HER ASSISTANCE**

The Government is unaware of any specific danger or risk of injury to the defendant or her family members as a result of her cooperation.

**E.    THE TIMELINESS OF PEMBER'S ASSISTANCE**

Pember's assistance to the Government was timely.  Within weeks of learning her status in the investigation and prosecution of the matter, Pember informed the Government of her decision to plead guilty and cooperate in the Government's effort to bring those involved in the fraud at CUC/Cendant to justice.  Indeed, as detailed above, there was substantial testimony during the direct and cross examination of Corigliano concerning Pember's timely decision to sign a cooperating plea agreement and its impact upon Corigliano, and ultimately the prosecutions of Shelton and Forbes.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's motion for a downward departure pursuant to U.S.S.G. § 5K1.1.

        Respectfully submitted,

        CHRISTOPHER J. CHRISTIE
        Special Attorney
        United States Department of Justice

        /s/ Craig Carpenito
By:  CRAIG CARPENITO (PHV0244)
       MICHAEL MARTINEZ (PHV0243)
       Special Attorneys
       United States Department of Justice